# In the United States Court of Federal Claims

No. 20-137C

(Filed: July 13, 2022)

|   |   |
|---|---|
| **ADVANCED POWDER SOLUTIONS, INC.,** | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Bryant S. Banes*, Neel, Hooper & Banes P.C., Houston, TX, for Plaintiff.  With him on the briefs was *Sarah P. Harris.*

*Eric J. Singley*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  With him on the briefs were *Brian M. Boynton,* Acting Assistant Attorney General, *Martin F. Hockey Jr.*, Acting Director, and *Steven J. Gillingham,* Assistant Director.

## OPINION AND ORDER

**SOLOMSON, Judge.**

Pending before the Court in this Contract Disputes Act[1] case is a motion by Plaintiff, Advanced Powder Solutions, Inc. ("APS"), to compel discovery responses from Defendant, the United States, acting by and through the Missile Defense Agency, part of the Department of Defense.

The Court **DENIES** the motion.

## I.      PROCEDURAL AND FACTUAL BACKGROUND

APS filed its complaint on February 7, 2020, challenging the Missile Defense Agency's claim that it overpaid APS in connection with two government contracts.  ECF

---

[1] Pub. L. No. 95-563, 92 Stat. 2383 (1978) (codified as amended at 41 U.S.C. §§ 7101–7109).

No. 1; *see also Advanced Powder Sols., Inc. v. United States*, 2022 WL 839809 (Fed. Cl. Mar. 22, 2022). The government filed its answer on May 7, 2020. ECF No. 8. On July 17, 2020, the Court ordered the parties to file cross-motions for summary judgment, ECF No. 11; briefing on those motions concluded on March 19, 2021, ECF Nos. 23, 24, 28, 29, 32, 33.

The week after the conclusion of summary judgment briefing, APS moved for leave to file a sur-reply. ECF No. 34. APS asserted, *inter alia*, that the government's reply brief was "the first time that APS has been able to determine the stated basis for the Government's claim against APS." ECF No. 34-1 at 1. The Court granted APS's motion on April 15, 2021, ECF No. 37, and the government filed a response to APS's sur-reply on May 20, 2021, ECF No. 40. The Court also granted APS leave to conduct "limited discovery" pursuant to APS's new understanding of the government's claim, ECF No. 42, and ordered counsel for APS to send written requests to the government articulating which specific documents APS sought, *see* ECF No. 45 at 29:14–30:7.[2]

Accordingly, on June 15, 2021, counsel for APS sent the government a set of interrogatories and a set of requests for production of documents ("RFPD"). *See* ECF Nos. 50-1, 50-2.[3] On August 27, 2021, government counsel responded, *see* ECF Nos. 50-3, 50-4, and ultimately agreed to produce thirty-three (33) documents, *see* ECF No. 50-5 at 2–8. The government produced those documents on September 10, 2021. *See id.* at 2–3.

Due to an apparent technical problem, however, APS counsel "could not access the documents" and requested via email, on September 10, 2021, that the government provide a link to the documents. *See* ECF No. 50 ("Mot. Compel") at 1. Government counsel did not reply to the email, and APS counsel never followed up. *Id.* at 1–2. On October 13, 2021, APS filed its motion to compel. *Id.* at 1. That same day, government counsel sent APS counsel a link "that provided [APS] access to the documents." ECF No. 52 ("Pl. Reply") at 1. On October 27, 2021, the government filed its response to APS's motion to compel. ECF No. 51 ("Def. Resp."). On November 3, 2021, APS filed its reply brief. Pl. Reply at 1.

---

[2] *See also* ECF No. 45 at 27:6–18 (APS counsel summarizing the documents to be requested via discovery as (1) a set of "original incurred cost submissions . . . that APS submitted to the government," and (2) "the reconciliation" that the government conducted between sets of various incurred cost submissions).

[3] Because this was APS's second set of RFPDs, they were numbered 10 to 14. *See* ECF No. 50-2 at 4 (describing: (1) RFPD 10, covering "any incurred cost submissions, original or revised, submitted by APS to the Government"; (2) RFPD 11, covering documents prepared by or for the government related to incurred cost submissions; (3) RFPD 12, covering documents reconciling incurred cost submissions with bank statements; (4) RFPD 13, covering various documents related to challenged direct costs; and (5) RFPD 14, covering other documents related to challenged direct costs).

In APS's reply brief in support of its pending motion to compel, APS appears to concede that the government has either produced, or no longer retains, all of the documents responsive to each of APS's RFPDs. Pl. Reply at 2–3 (noting, regarding RFPDs 10 and 11, that "the Government . . . no longer has the original incurred cost submissions"); *id.* at 7 (acknowledging the government's assertion that "responsive documents have already been produced" regarding RFPD 12 and requesting only that the government update its RFPD response accordingly); *id.* at 7–8 (noting, regarding RFPDs 13 and 14, that the government's response brief "suggests that no responsive documents exist" and that, if that is true, the government should update its RFPD responses to reflect as much).[4] Nevertheless, APS asserts that the government committed "spoliation" when the government "fail[ed] to retain relevant evidence" that is putatively responsive to RFPDs 10 and 11. *Id.* at 4–7. The evidence in question — incurred cost submissions — are documents that APS prepared but that APS itself no longer possesses. *Id.* at 4 n.4. Accordingly, APS asks the Court to "make an adverse inference finding against the Government" regarding RFPDs 10 and 11. *Id.* at 7.

On June 1, 2022, the Court held a telephonic status conference to discuss, *inter alia*, APS's motion to compel. *See* ECF No. 60 ("Tr.").

## II. DISCUSSION

### A. The Court Denies APS's Motion to Compel

The Rules of the United States Court of Federal Claims ("RCFC") allow parties to "move for an order compelling disclosure or discovery" under a range of circumstances. RCFC 37(a)(1). Among other things, a party can move to compel production of a required disclosure, RCFC 37(a)(3)(A), or to compel production of a specific discovery response, like "an answer, designation, production, or inspection," RCFC 37(a)(3)(B); *see also*, *e.g.*, *New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 820 (2015) (compelling a party "to redo its previous searches" for responsive documents); *3rd Eye Surveillance, LLC v. United States*, 158 Fed. Cl. 216, 232 (2022) (ordering that a party "clarify [its] answers" to a series of RFPDs).

---

[4] While APS's concession regarding RFPDs 13 and 14 is somewhat ambiguous, *see* Pl. Reply at 8 (admitting that the government's response *brief* "suggests that no responsive documents exist," but also noting that the government's *response* to RFPDs 13 and 14 "suggests that [responsive] documents exist, but the government simply will not produce them"), counsel for APS abandoned the position that the government may be withholding responsive documents in a subsequent telephonic status conference the Court held on June 1, 2022. ECF No. 60 at 5:1–3 ("[APS COUNSEL]: I believe the Government when they say they don't have anything else."); *see also Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 54 (2021) (collecting cases for the proposition that unambiguous admissions of counsel bind parties).

3

This Court exercises broad discretion regarding "the scope and conduct of discovery." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984); *see also Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991))). That broad discretion extends to resolving motions to compel. *See New Orleans Reg'l Physician Hosp. Org.*, 122 Fed. Cl. at 815. When resolving such motions, "'court[s] must balance potentially conflicting goals' with the understanding that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *3rd Eye Surveillance*, 158 Fed. Cl. at 223 (second alteration in original) (first quoting *Petro-Hunt, LLC v. United States*, 114 Fed. Cl. 143, 144 (2013); and then quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The Court need not explore the outer bounds of its discretion in this case, however, as APS concedes that the government has produced all responsive documents in its possession. *See* Tr. at 5:1–3 ("[APS COUNSEL]: Well, I believe the Government when they say they don't have anything else."); Pl. Reply at 2–3, 7–8. In light of that concession, the Court agrees with the government that "there is nothing to compel." Def. Resp. at 1. Accordingly, the Court denies APS's motion to compel.[5]

## B. The Court Denies APS's Request For an Adverse Inference Sanction

APS further asserts that the government's failure to retain the documents APS desires was "tantamount to spoliation," Pl. Reply at 4, and that the Court should thus "use its inherent power" to "make an adverse inference finding against the Government," *id.* at 7. The Court declines to do so.

---

[5] In the alternative, the Court denies APS's motion to compel for failing to meet-and-confer with the government. RCFC 37 requires parties to include with any motion to compel "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." RCFC 37(a)(1). Although APS's motion includes a conclusory certification, the requirement to confer "cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention." *Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 564 (2018) (quoting *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996)). Instead, the requirement "mandates a genuine attempt to resolve the discovery dispute through non[-]judicial means." *Id.* (quoting *Shuffle Master, Inc.*, 170 F.R.D. at 171). APS has not met this requirement. *See* ECF No. 50-5 at 2–3 (email correspondence indicating that (1) the government provided responsive documents to APS on September 10, 2021, and (2) APS counsel informed the government the same day that APS counsel "believe[d]" they "need[ed] to be given a proper link" to access the documents); Mot. Compel at 1–2 (indicating that APS filed its motion to compel, without any communication after that email exchange, on September 10, 2021); Def. Resp. at 5 ("APS did not follow up or otherwise contact Government counsel after September 10, 2021. On October 13, 2021[,] APS filed a motion to compel."). RCFC 37 requires more than sending a single email alluding to possible technical difficulties.

This Court may impose discovery sanctions pursuant to either: (1) RCFC 37, or (2) the Court's inherent power. *See, e.g., United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 264 (2007); *4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118, 130 (2019). A litigant, however, "can only be sanctioned for destroying evidence if it had a duty to preserve it." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). That duty arises when the party "knows or reasonably should know that evidence in its control may be relevant to a reasonably foreseeable legal action." *Jones v. United States*, 2022 WL 473032, at *4 (Fed. Cir. Feb. 16, 2022). The "breach of the duty to preserve evidence, either through destruction of evidence or through failure to properly preserve it," is known as spoliation. *Id.; see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (citing *Spoliation*, Black's Law Dictionary (6th ed. 1990))).

With regard to the first sanctions path, "RCFC 37 provides an arsenal of discovery sanctions designed to discourage delay, waste of resources, and dilatory practices in favor of full disclosure of relevant information prior to trial." *Applegate v. United States*, 35 Fed. Cl. 47, 56 (1996). This Court may impose sanctions pursuant to RCFC 37 "where the spoliation violates a specific court order or disrupts the court's discovery regime." *United Med. Supply Co.*, 77 Fed. Cl. at 264.[6] APS, however, barely acknowledges this rule, referring to RCFC 37 only in a one-sentence footnote. *See* Pl. Reply at 6 n.3.

As for the second path, this Court may impose sanctions "based on the court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process.'" *United Med. Supply Co.*, 77 Fed. Cl. at 263 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Courts, however, must exercise this inherent power with great "restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Chapman L. Firm, LPA v. United States*, 113 Fed. Cl. 555, 609 (2013) ("The inherent power of courts is broad, but must be exercised by judges cautiously[.]"), *aff'd*, 583 F. App'x 915 (Fed. Cir. 2014). APS requests sanctions pursuant to the Court's "inherent power." Pl. Reply at 6.

Specifically, APS requests that the Court impose a sanction on the government in the form of an adverse inference. Pl. Reply at 4, 6–7. An "adverse inference" is a remedy

---

[6] Exceptions to this rule appear to include RCFC 37(b)(2) (allowing the Court to "issue further just orders" when a party fails to obey a discovery order or pay expenses), and RCFC 37(e) (permitting the Court to order sanctions for unreasonable loss of electronically stored information). Of course, even had APS invoked RCFC 37 in its reply brief, neither of these rules would be at issue, as APS has disclaimed any argument that the government failed to obey a discovery order, Tr. 5:1–3, and makes no claims that the rules of electronically stored information apply to the documents in this case.

for spoliation, whereby the Court "may infer that the destroyed evidence would have been favorable to the opposing side." *United Med. Supply Co.*, 77 Fed. Cl. at 263 (citing Jonathan Judge, *Reconsidering Spoliation: Common-Sense Alternatives to the Spoliation Tort*, 2001 Wis. L. Rev. 441, 444 (2001)); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. NLRB*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) ("[T]he [adverse inference] rule provides that when a party has relevant evidence within [its] control which [it] fails to produce, that failure gives rise to an inference that the evidence is unfavorable to [it]."), *cited with approval in Day & Zimmermann Servs. v. United States*, 38 Fed. Cl. 591, 602 n.13 (1997); *Commercial Ins. Co. v. Gonzalez*, 512 F.2d 1307, 1314 (1st Cir. 1975) ("It is elementary that if a party has evidence . . . in its control and fails to produce it, an inference may be warranted that the document would have been unfavorable."). The United States Court of Appeals for the Federal Circuit, our appellate court, has held that an adverse inference based on the destruction of evidence is appropriate when:

> evidence has been destroyed and "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) . . . the records were destroyed with a culpable state of mind; and (3) . . . the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007) (alterations in original) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Importantly, "[t]he party seeking an adverse inference has the burden of establishing that spoliation has occurred," *Chapman L. Firm*, 113 Fed. Cl. at 610 (citing *K-Con Bldg. Sys., Inc. v. United States*, 106 Fed. Cl. 652, 666 (2012)), and "must . . . 'come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been,'" *Micron Tech., Inc.*, 645 F.3d at 1328 (second alteration in original) (emphasis omitted) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994)).

The Court declines to exercise its inherent power to find spoliation in this case.

As an initial matter, pursuant to RCFC 7, "[a] request for a court order must be made by motion." RCFC 7(b)(1).[7] APS acknowledges as much in its motion to compel.

---

[7] Indeed, RCFC 37 generally requires that the party requesting sanctions do so via motion. *See* RCFC 37(a)(3)(A) ("If a party fails to make a disclosure required by RCFC 26(a), any other party may *move* . . . for appropriate sanctions." (emphasis added)); RCFC 37(c)(1) (listing sanctions that the Court may impose "*on motion* and after giving an opportunity to be heard" if a litigant fails to identify a witness or provide required information (emphasis added)); RCFC 37(c)(2) ("[T]he requesting party may *move* that the party who failed to admit pay the reasonable expenses . . . .")

6

*See* Mot. Compel at 8 ("Plaintiff reserves the right to bring a Motion for Sanctions against the Government should the Government continue to fail to cooperate in discovery."). Thus, irrespective of a party's chosen method in pursuing sanctions against another party — *i.e.*, whether via RCFC 37 or the Court's inherent powers — the party seeking the sanctions must do so via motion.

Here, however, APS has not filed a motion for sanctions in the form of an adverse inference or otherwise; rather, APS makes an offhand request in a few terse paragraphs in its reply brief in support of a motion to compel. *See* Pl. Reply at 4–7. Such an undeveloped and sparse argument embedded in a reply brief is insufficient to constitute a motion pursuant to RCFC 7(b)(1). *See San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 482 n.16 (2019) (denying transfer request where plaintiff filed no motion but instead "improperly embedded [the request] within its response brief"); *Kersten v. Quick Collect, Inc.*, 152 F. Supp. 3d 1301, 1304 (D. Or. 2016) ("Because Defendant's request for sanctions is included in its response to Plaintiff's motion, it is procedurally improper and should be denied."); *Forto v. Cap. One Bank, N.A.*, 2017 WL 4168529, at *3 (N.D. Cal. Sept. 20, 2017) ("Plaintiff's request to stay is procedurally improper; Plaintiff did not file it as a separate motion and instead included it with her objections to [Defendant's] Reply.").[8] This procedural deficiency alone is a sufficient basis on which to deny APS's request.

Moreover, even if APS had properly moved for sanctions, APS fails to meet its burden to establish that an adverse inference is warranted here. First, APS sets its request for an adverse inference on an exceedingly weak foundation. To support the central proposition that the government was required to keep these documents (*i.e.*, the first requirement in the Federal Circuit's three-part test), APS provides only an unexplained list of guidance documents and regulations that, according to APS, "required" the government to retain the evidence at issue. *See* Pl. Reply at 4.

---

(emphasis added)); RCFC 37(d)(1)(A) ("The court may, *on motion*, order sanctions . . . ." (emphasis added)).

[8] Even if APS's request for sanctions were viewed merely as an argument (and not as independent request for court action, requiring a separate motion), a reply brief is an entirely inappropriate medium for new arguments. *See, e.g.*, *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) ("[A] [c]ourt . . . generally refuses to entertain arguments raised for the first time in [a party]'s reply brief."); *United States v. Medeiros*, 710 F. Supp. 106, 110 (M.D. Pa.) ("[I]t is improper for a party to present a new argument in his or her reply brief."), *aff'd*, 884 F.2d 75 (3d Cir. 1989); *Kane Gas Light & Heating Co. v. Pennzoil Co.*, 587 F. Supp. 910, 912–13 (W.D. Pa. 1984) ("[T]he presentation of additional evidentiary material in the reply brief was improper; . . . to allow this practice would be to permit a practice of 'sandbagging', perhaps allowable in poker, but not proper in a lawsuit.").

In that regard, APS cites FAR 4.803(a)(17), (a)(19), (a)(40), (b)(4), (b)(19). *See* Pl. Reply at 4. This regulation provides, in relevant part, as follows:

> The following are examples of the records normally contained, if applicable, in contract files:
>
> (a) Contracting office contract file.
>
>   . . . .
>
>   (17) Data and information related to the contracting officer's determination of a fair and reasonable price. This may include—
>   (i)   Certified cost or pricing data;
>   (ii)  Data other than certified cost or pricing data;
>   (iii) Justification for waiver from the requirement to submit certified cost or pricing data; or
>   (iv)  Certificates of Current Cost or Pricing Data.
>
>   . . . .
>
>   (19) Cost or price analysis.
>
>   . . . .
>
>   (40) Any additional documents on which action was taken or that reflect actions by the contracting office pertinent to the contract.
>
>   . . . .
>
> (b) Contract administration office contract file.
>
>   . . . .
>
>   (4)  Certified cost or pricing data, Certificates of Current Cost or Pricing Data, or data other than certified cost or pricing data; cost or price analysis; and other documentation supporting contractual actions executed by the contract administration office.
>
>   . . . .
>
>   (19) Any additional documents on which action was taken or that reflect actions by the contract administration office pertinent to the contract. . . . .

FAR 4.803(a)(17), (a)(19), (a)(40), (b)(4), (b)(19).

The Court has reviewed this regulation and fails to see how it "require[s]" the government to retain the documents at issue. Pl. Reply at 4. The Court cannot definitively conclude that the government was "required," *id.*, to retain the documents at issue, as the cited regulation only specifies "examples of the records normally contained

8

. . . in contract files," FAR 4.803.  APS makes literally no effort to explain how that FAR provision relates to document retention or discovery obligations in the context of litigation and does not attempt to show whether this Court (or any other) has applied that FAR provision for the purpose of imposing sanctions on the government.  The mere citation of a case, statute, or regulation does not an argument make.  "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), and, accordingly, the Court will not litigate this matter on behalf of APS.[9]

As for the second adverse inference requirement — namely, whether "the records were destroyed with a culpable state of mind," *Jandreau*, 492 F.3d at 1375 — APS again misses the mark and fails to present any evidence that the government was negligent, let alone acted in bad faith, in failing to preserve the documents at issue.[10]  As the Court understands the facts, the missing documents are those APS prepared but that it no longer possesses either.  Without concrete evidence demonstrating the government's culpability, this is "a classic example of the pot calling the kettle black, if there ever was one."  *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 59 (2009), *aff'd*, 862 F.3d 1370 (Fed. Cir. 2017).  It is not the responsibility of the government to ensure that there are electronic back-up copies of APS's own evidence in the event APS failed to preserve its own physical copies of that evidence.  The Court rejects, as untenable, APS's implicit argument that the government somehow was *per se* culpable here, when APS *itself* clearly failed to preserve the documents it seeks.  This Court will not hold the government responsible for APS's own failures.  Whether this Court may have reached a different conclusion given a proper motion with supporting evidence to show the government's culpability is not a question this Court will attempt to answer; that alternative reality is not before the Court.

---

[9] The Court's conclusion applies with equal force to APS's unexplained citation to Sections 4-402, 4-403, 4-405, and 4-410 of the Defense Contract Audit Agency Contract Audit Manual (the "DCAM").  *See* Pl. Reply at 4.  Moreover, the DCAM itself specifically instructs auditors to avoid citing the DCAM "in audit reports or correspondence" outside the Defense Contract Audit Agency.  DCAM 0-002.a (Nov. 2021); *Cf.* 1 Karen L. Manos, *Government Contract Costs and Pricing* § 3:5 (2d ed. 2009) (noting that the DCAM "do[es] not have the force and effect of law, and [is] therefore not binding on contractors or the courts").

[10] In determining whether a party acted with a "culpable state of mind," the party seeking the sanction must demonstrate, at a minimum, the negligent destruction of evidence.  *See Kirkendall v. Dep't of Army*, 573 F.3d 1318, 1327 n.6 (Fed. Cir. 2009) (noting that "there is a conflict in the circuits as to whether more than mere negligence," *i.e.*, bad faith, "is required to support an adverse inference" (citing *Jandreau*, 492 F.3d at 1376)).  The Federal Circuit also has indicated, in dicta, that a showing of bad faith is required.  *See Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 966 (Fed. Cir. 2010) (noting, in a case on appeal from this Court, that "the test for an adverse inference sanction" requires (1) "a finding of evidence destruction," and (2) "bad faith by the destructive party" (citing *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed. Cir. 1986))).  This Court need not resolve the precise standard, however, because, as noted above, APS fails to present evidence of culpability under either standard.

With regard to the third and final element of the Federal Circuit's test for an adverse inference sanction, APS, in essence, asks the Court to take APS at its word that the missing documents would prove APS's entire case and, thus, that APS is entitled to judgment. But, it is the burden of the moving party to establish the necessity of an adverse inference. *See Chapman L. Firm*, 113 Fed. Cl. at 610. APS asserts that "[i]f APS has the original incurred cost submissions . . . , APS would be able to explain the inconsistencies in the [contracting officer's] determination of overpayment and definitively show that the [the contracting officer's final decision] fails to consider costs that were later accepted." Pl. Reply at 4. APS cites a single email from a Defense Contract Management Agency administrative contracting officer, *see* ECF No. 52-2 at 2, but the Court cannot discern how that email supports APS's argument. APS's conclusory assertion about the putative import of the missing documents is insufficient to justify an adverse inference sanction. As indicated above, the Court will not build APS's legal argument for APS.

At bottom, APS does not come close to meeting the legal standard for an adverse inference.[11] The lack of a coherent argument, consisting of a robust analysis of the legal standard as applied to demonstrable facts, renders APS's request for an adverse inference all but dead on arrival.

Finally, APS fails to explain what adverse inference, specifically, it wants the Court to make. Instead, APS seems to ask Court to declare the entirety of the government's overpayment claim to be erroneous. *See* Pl. Reply at 4; *id.* at 7 (requesting "an adverse inference finding against the Government as to th[e] point" that the government's overpayment calculation was erroneous); *id.* at 8 (requesting "an adverse inference" of undefined terms). The undersigned is not telepathic and will not attempt to divine what APS believes it is entitled to. Indeed, granting APS's request, if anything, would be a blatant abuse of this Court's discretion and would directly conflict with the Court's responsibility to exercise restraint when issuing sanctions pursuant to the Court's inherent powers. *See Chambers*, 501 U.S. at 44 (warning that "inherent powers must be exercised with restraint and discretion," and characterizing "outright dismissal of a lawsuit" as "a particularly severe sanction").

Accordingly, the Court denies APS's request for an adverse inference.

---

[11] The sole case APS cites for the proposition that this Court can impose an adverse inference sanction pursuant to its inherent authority involved a party that requested sanctions in a motion. Pl. Reply at 5–6 (citing *United Med. Supply Co.*, 77 Fed. Cl. at 263).

## III.  CONCLUSION

For the above reasons, the Court **DENIES** APS's motion to compel and its request for sanctions.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
**Matthew H. Solomson**
**Judge**
